**Guirlande CAJUSTE, Appellant,**

v.

**Bruce HERLITSCHEK, as Guardian of the Guardianship of Robert Herlitschek, Appellee.**

**No. 4D16–510.**

District Court of Appeal of Florida, Fourth District.

Nov. 2, 2016.

---

Bruce L. Fineman of Bruce L. Fineman, P.A., Boynton Beach, for appellant.

Steven Ginns, Boca Raton, for appellee.

GERBER, J.

The ward's longtime aide appeals from the circuit court's final order denying her motion to unseal accountings, set aside an order discharging the ward's son as guardian, and show cause. The aide argues that the court erred in denying her motion because the court's earlier order appointing the ward's son as limited guardian directed the ward's son to pay a $25,000 gift to the aide upon the ward's death, and the ward's son failed to do so. We conclude that the aide's motion required an evidentiary hearing. Therefore, we reverse and remand for that purpose.

The ward's son filed a petition to determine the ward's capacity and a separate petition to be appointed as the ward's plenary guardian due to the ward's incapacity. In the petitions, the ward's son alleged that the ward had numerous disabilities, was unable to manage his financial affairs, and was incapable of, among other things, making a gift or disposition of property. The ward's son alleged a plenary guardian was necessary to exercise the ward's delegable rights.

The court appointed counsel to represent the ward. The court also appointed a three-person committee to examine the ward and recommend whether the ward required a guardianship. After evaluating the ward, one committee member determined the ward was incapacitated and in need of a plenary guardianship; a second committee member determined the ward was incapacitated but in need of only a limited guardianship; and a third committee member determined the ward was not incapacitated or in need of guardianship.

The court conducted a hearing to determine incapacity. Attending the hearing was the ward, the ward's appointed counsel, the ward's aide, the ward's companion, and the ward's son with his counsel.

During the incapacity hearing, the ward's counsel told the court the parties had reached an agreement on incapacity and for a limited guardianship. The court recited a series of rights being removed, including the following discussion with the son's counsel and the ward's counsel:

THE COURT: To manage property or make a gift or disposition of property?

SON'S COUNSEL: Yes, with one exception.

THE COURT: Which is?

SON'S COUNSEL: ... [The ward] wants to make a specific gift of $25,000

to his long term aid[e] ... and $75,000 to his girlfriend.

THE COURT: Okay.... [S]o he has capacity to do that, is that what you're saying?

SON'S COUNSEL: It was agreed upon.

THE COURT: Well, okay. All right.

SON'S COUNSEL: It's something that he ... wants.

WARD'S COUNSEL: Yes, that's something we negotiated, Your Honor.

THE COURT: Okay. All right. So I'll come back to that.

At the end of the discussion with the parties' counsel, the court stated:

So by this order I've determined that there's limited incapacity due to cognitive disease. The rights that are being removed are his rights to contract, to sue or be sued, to apply for benefits, to manage property, *except that he retains the right to make a gift to [his aide] of $25,000 and [his companion] of $75,000* and to consent to medical treatment. He is not incapacitated to determine his residence or make social decisions. Therefore, he retains his right to vote and *he retains ... his right* to determine residence and make decisions about social environment and *to make those two gifts.*

(emphasis added).

At the end of the hearing, the ward asked the court for the definition of a limited guardianship. The court explained a limited guardianship and stated: "And as far as your property goes, you're allowed to still make those two gifts that counsel told me you wanted to be able to make."

The court later entered a written order determining the ward was incapacitated and required a limited guardianship. In the order, the court marked a pre-printed section to indicate that the ward lacked capacity "to manage property or to make a gift or disposition of property." However, next to the pre-printed section, the court wrote: "Except the ward retains right to make a gift to [his aide] of $25,000 and to [his companion] of $75,000." In another pre-printed section, the court indicated that the specific powers and duties delegated to the guardian included the ability "to manage property or to make any gift or disposition of property." However, next to this pre-printed section, the court again wrote: "Except the ward retains right to make a gift of $25,000 to [his aide] and [his companion] of $75,000."

The court also issued an order appointing the ward's son as the ward's limited guardian. In that order, the court stated, in pertinent part:

[Ward] is not capable of exercising the following rights which shall be the duty and authority of the appointed limited guardian: to contract, to sue and defend lawsuits, to apply for government benefits, to travel, to consent to medical treatment and to manage property or to make a gift or dispose of property *except for a gift of $75,000 payable upon [the ward's] death to his friend and companion ... and a gift of $25,000 payable upon his death to his long time aide ....*

(emphasis added).

The ward died three months later.

The ward's son later filed his petition to be discharged as the ward's limited guardian. In the petition, the ward's son alleged that he had fully discharged all of his duties. The court entered an order granting the petition.

The ward's aide later filed a motion to unseal accountings, set aside the order discharging the ward's son as guardian, and show cause. The aide alleged that the court's earlier order appointing the ward's

son as limited guardian directed the ward's son as guardian to pay the $25,000 gift to the aide upon the ward's death, but the ward's son failed to do so. The aide requested the court to enter an order: (1) unsealing the ward's son's accountings for her review; (2) setting aside the order discharging the ward's son as limited guardian; (3) directing the ward's son to account for the unpaid $25,000 gift; and (4) requiring the ward's son to show cause why he should not be held in contempt for failing to comply with the court's order to pay the $25,000 gift to the aide upon the ward's death.

The court, without a hearing, reviewed the court file and videotape from the incapacity hearing, and entered an order denying the aide's motion. In the order, the court found:

[T]he tape of the incapacity proceeding ... showed that the Ward affirmatively desired to make a $25,000 gift to his longtime aide....

The Order Appointing the Guardian ... clearly state[d] that the Ward retain[ed] the right to make a gift to his longtime aide....

However, since the Ward did not make the gift to [his aide] during his lifetime, which he had the right to do or not, the relief sought by [the aide] herein is not appropriate and her Motions are denied.

This appeal followed. The aide argues that the court erred in denying her motion because the court's earlier order appointing the ward's son as limited guardian directed the ward's son to pay the $25,000 gift to the aide upon the ward's death, and the ward's son failed to do so. According to the aide, constructive delivery of the gift existed when the court ordered the limited guardianship, thereby removing the ward's access to and control over the assets necessary to fund the gift during his lifetime or upon his death.

We conclude that the aide's motion required an evidentiary hearing. We begin with the observation that the court's written order appointing the ward's son as limited guardian conflicted with the court's oral pronouncement after the incapacity hearing and the court's written order determining the ward's incapacity regarding the timing of the ward's gifts:

- After the incapacity hearing, the court orally stated that the ward "retains the right to make a gift to [his aide] of $25,000 and [his companion] of $75,000," *without any mention of the timing of such gifts.*

- In the written order determining the ward's incapacity, the court indicated that the ward lacked capacity "to manage property or to make a gift or disposition of property," but then wrote: "[E]xcept the ward retains right to make a gift to [his aide] of $25,000 and to [his companion] of $75,000," *without any mention of the timing of such gifts.*

- However, in the written order appointing the ward's son as limited guardian, the court stated that the ward was not capable of exercising the right to make a gift "except for a gift of $75,000 *payable upon [the ward's] death* to [his companion] and a gift of $25,000 *payable upon his death* to his long time aide." (emphasis added).

To the extent this conflict existed between the court's oral pronouncement and the court's two written orders regarding the timing of the ward's gifts, the court's oral pronouncement controls. *See Glick v. Glick,* 874 So.2d 1238, 1241 (Fla. 4th DCA 2004) ("A trial court's oral pronouncement must control over a later written order."). Based on the court's oral pronouncement,

no directive existed regarding the timing of the ward's gifts.

What remains, therefore, is not only the question of the timing of the ward's gifts, but also the conditions by which the ward was to make those gifts. All that the court had before it when it issued the order on appeal was the court file and videotape from the incapacity hearing. We see nothing in that record supporting the court's finding that "since the Ward did not make the gift to [his aide] *during his lifetime* ... the relief sought by [the aide] herein is not appropriate." (emphasis added). The only stipulated "evidence" which the parties presented to the court at the incapacity hearing was that the ward "want[ed] to make a specific gift of $25,000 to his long term aide ... and $75,000 to his girlfriend," and that the ward "had capacity to do that."

Because the parties presented no evidence to the court regarding the timing of the ward's gifts, or the conditions by which the ward was to make those gifts, the court erred in denying the aide's motion without an evidentiary hearing. After the evidentiary hearing, if the court should find that the ward's ultimate intent was to ensure that his aide received his $25,000 gift in some fashion at some time, then it shall be necessary for the court to grant the aide's motion to set aside the court's order discharging the ward's son as guardian, unseal the guardian's accountings, and enter such other and further orders as are necessary to satisfy the ward's intent.

*Reversed and remanded for proceedings consistent with this opinion.*

WARNER and CONNER, JJ., concur.