# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

_____

CHRIS NOCCO, in his official capacity as
Sheriff of Pasco County,

Appellant,

v.

DAKOTA WILCOX,

Appellee.

No. 2D2024-1585

_____

June 6, 2025

Appeal pursuant to Fla. R. App. P. 9.130 from the Circuit Court for Pasco
County; Kimberly Sharpe Byrd, Judge.

Benjamin D. Baird and Thomas W. Poulton of DeBevoise & Poulton, P.A.,
Winter Park, for Appellant.

Jennifer Ann Burns of Carlson Meissner Hayslett P.A., Clearwater, for
Appellee.

SLEET, Chief Judge.

In this interlocutory appeal, Chris Nocco, in his official capacity as

Sheriff of Pasco County, challenges the nonfinal order denying his motion

for summary judgment entered in favor of Dakota Wilcox in the

underlying negligent training action. On appeal, Sheriff Nocco argues

that the trial court erred in denying his motion for summary judgment

on sovereign immunity grounds because he was engaged in a discretionary function which makes him immune from suit. Because the negligent training cause of action alleged in Wilcox's complaint is premised upon the Sheriff's planning-level decisions, he is entitled to sovereign immunity, and we reverse.

## I.    BACKGROUND

It appears from the summary judgment evidence presented below that on April 14, 2016, Dakota Wilcox, a then-thirteen-year-old student at Bayonet Point Middle School, attempted to climb over a fence and reenter the school after dismissal to retrieve his computer tablet. The school shared a campus with Fivay High School, and Wilcox was confronted by Fivay Principal Marsha VanHook and Bayonet Point Assistant Principal Kathy Wild. While walking Wilcox to the principal's office, Principal VanHook heard Wilcox say: "There is no use anyway, no one cares. I'm going to cut myself." Assistant Principal Wild heard Wilcox say that he would either "cut" or "kill" himself. Wilcox did not clarify his statement.

The Bayonet Point school resource deputy was called to the principal's office and observed that Wilcox was visibly agitated, rocking back and forth, sweating, breathing rapidly, and clenching his hands and had bouts of crying. Both school administrators, Principal VanHook and Assistant Principal Wild, reported Wilcox's self-harm statements to the school resource deputy. Additionally, Wilcox told the deputy that he thought about killing himself all the time, that he tried to cut his wrist with the lid of a can, that he thought he would be better off dead, and that he wished he were dead.

When Wilcox's stepmother arrived at the school, she called Wilcox's mental health counselor Holly Edgren. After Edgren spoke with Wilcox

2

over the phone, she performed a verbal assessment and expressed that she believed Wilcox was not suicidal and that he did not need to be Baker Acted.[1]  However, based on the information from the administrators and her own observations, the school resource deputy determined that Wilcox was in "a state of crisis," detained him under the Baker Act, and transported him to a mental health facility where he was kept for two nights.

At the time of the incident, the school resource deputy had not received training specific to the Baker Act.  However, she had attended an eighty-hour crisis intervention training, which addressed de-escalation and mental health crisis training.  Approximately nine months after the incident, in January 2017, the deputy completed Baker Act training.

On March 15, 2021, Allan Wilcox, on behalf of his then-minor son Dakota Wilcox, filed the operative two-count amended complaint against Sheriff Nocco alleging in count two that Sheriff Nocco failed to educate and train the school resource officer in properly enforcing Baker Act provisions.  After engaging in discovery, Sheriff Nocco moved for summary judgment arguing that he was entitled to sovereign immunity because the alleged deficiencies in the Sheriff's training of his deputies involved discretionary, planning-level functions that are immune from suit.  Following a summary judgment hearing, the trial court issued a written order denying the motion and concluding that the timeliness of the school resource deputy's Baker Act training was an operational function and that Sheriff Nocco was not entitled to immunity as to the negligent training count.  Sheriff Nocco now challenges the denial.

---

[1] §§ 394.451-.47892, Fla. Stat. (2021).

## II.   ANALYSIS

On appeal, Sheriff Nocco argues that the trial court erred in denying his motion for summary judgment as to the negligent training count because the court improperly considered the timeliness of the school resource deputy's Baker Act training when it was outside the scope of the operative complaint.  He further argues that even if the timeliness was within the scope, the Sheriff's training decisions, including *when* to conduct training, are discretionary functions—not operational—and therefore he is immune from suit.

We review de novo the trial court's denial of the Sheriff's motion for summary judgment based on sovereign immunity.  *See City of New Port Richey v. Lamko*, 359 So. 3d 840, 843 (Fla. 2d DCA 2023).

The State of Florida and its subsidiaries—including its agencies and subdivisions—are generally immune from tort liability; however, Florida has waived this immunity "under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state." § 768.28(1), Fla. Stat. (2023); *see also* art. X, § 13, Fla. Const.  Yet even if the claim contained sufficient allegations of tort liability under which a private person would be liable, the waiver of sovereign immunity would still not apply if the challenged acts of the state agent were "discretionary" governmental acts rather than merely "operational" ones. *See Pollock v. Fla. Dep't of Highway Patrol*, 882 So. 2d 928, 933 (Fla. 2004) ("[B]asic judgmental or discretionary governmental functions are immune from legal action, whereas operational acts are not protected by sovereign immunity.").  "In this context, a 'discretionary,' planning-level function involves 'an exercise of executive or legislative power such that a court's intervention by way of tort law would inappropriately entangle the

4

court in fundamental questions of policy and planning.' " *Beach Cmty. Bank v. City of Freeport*, 150 So. 3d 1111, 1114 (Fla. 2014) (quoting *Mosby v. Harrell*, 909 So. 2d 323, 328 (Fla. 1st DCA 2005)). "An 'operational' function, on the other hand, 'is one not necessary to or inherent in policy or planning, that merely reflects a secondary decision as to how those policies or plans will be implemented.' " *Id.* (quoting *Dep't of Health & Rehab. Servs. v. B.J.M.*, 656 So. 2d 906, 911 n.4 (Fla. 1995)). "*Planning level functions* are generally interpreted to be those requiring basic policy decisions, while *operational level functions* are those that implement policy." *Lamko*, 359 So. 3d at 844 (quoting *Wallace v. Dean*, 3 So. 3d 1035, 1053 (Fla. 2009)).

Claims for negligent training are barred by sovereign immunity when they involve "decision[s] regarding *how* to train . . . officers and *what subject matter to include* in the training" because those are "clearly an exercise of governmental discretion regarding fundamental questions of policy and planning." *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1266 (11th Cir. 2001) (emphasis added). However, negligent training claims based upon " 'the *implementation or operation* of [a] training program,' as opposed to the program's content, may involve operational functions, depending on the facts of the case." *N.R. by Ragan v. Sch. Bd. of Okaloosa Cnty., Fla.*, 418 F. Supp. 3d 957, 997 (N.D. Fla. 2019) (emphasis added) (quoting *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005)).

In this case, Wilcox alleged in the complaint that the Sheriff failed "to educate and train [the school resource deputy] in properly enforcing the Baker Act provisions." Wilcox argues that he is not challenging the content of the Baker Act training but rather that he is challenging the Sheriff's implementation of the Baker Act training. However, the record

is devoid of any evidence that the Sheriff adopted a Baker Act training policy or that the school resource deputy received the training outside of a policy-prescribed timeframe. Without such evidence, arguments regarding the timeliness of the deputy's Baker Act training cannot be taken as a challenge to the *implementation* of an existing policy. Furthermore, despite the trial court's conclusion otherwise, we emphasize that just because the school resource deputy completed Baker Act training about nine months after her encounter with Wilcox does not establish that the Sheriff had an established policy in place such that the timeliness of the deputy's training is an operational function.

We note that claims premised on the *timing* of training can fall under either discretionary or operational functions of the government, depending on the facts of the case. Determinations regarding *when* officers need to complete training is an exercise of governmental discretion regarding fundamental questions of policy and planning because that flows from decisions regarding *how* to train. Therefore, such a claim would be barred by sovereign immunity. However, where there is already an established policy regarding the timing of training and an officer failed to complete training according to that policy, such a negligent training claim would challenge an operational function.

Here, however, because there is no evidence that the Sheriff adopted a policy that required the school resource deputy to complete Baker Act training or that the deputy did not receive a policy-required training, the trial court erred in concluding that the timeliness of the deputy's Baker Act training was an operational function and that Sheriff Nocco was not entitled to immunity as to the negligent training count.

Accordingly, the trial court erroneously denied Sheriff Nocco's motion for summary judgment as to count two, and we reverse and

6

remand with instructions for the trial court to grant the Sheriff's motion on that count. *See Sch. Bd. of Broward Cnty. v. McCall*, 322 So. 3d 655, 659 (Fla. 4th DCA 2021).

Reversed and remanded with instructions.

KELLY and MORRIS, JJ., Concur.

———————————————————

Opinion subject to revision prior to official publication.